BARRY J. PORTMAN
Federal Public Defender
JOYCE LEAVITT
Assistant Federal Public Defender
555 12th Street, Suite 650
Oakland, CA 94607
Telephone:  (510) 637-3500

Counsel for Defendant NAVARRO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-00807 SBA |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| vs. | ) | |
| | ) | Date: July 8, 2008 |
| JENNIFER NAVARRO, | ) | Time: 10:00 a.m. |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**INTRODUCTION**

On July 8, 2008, defendant Jennifer Navarro will plead guilty to one count of mail fraud in violation of 18 USC §1341.  Ms. Navarro will be sentenced by this Court on the same date. The parties have agreed upon a Rule 11(c)(1)(C) plea agreement in which they stipulate to an adjusted offense level of 14 and a sentence of 21 months imprisonment.  Plea Agreement ¶¶7, 8. United States Probation Officer Constance Cook calculates the adjusted offense level to be 14 and criminal history category to be III for a guideline range of 21-27 months.  PSR ¶¶35, 36, 72. She recommends a sentence of 24 months imprisonment.  PSR, Sentencing Recommendation. Ms. Navarro believes that her criminal history category is II rather than III and disagrees with the probation officer's determination that she gets criminal history points for being "under a criminal justice sentence," as the term is used in USSG §4A1.1(d) and defined in 4A1.1,

1  comment. (n.4). Ms. Navarro calculates the guideline range to be 18-24 months.

2          Regardless of whether the Court determines that the criminal history category should be

3  II or III, the stipulated sentence of 21 months imprisonment falls within either guideline range

4  and Ms. Navarro asks the Court to sentence her accordingly. A sentence of 21 months custody

5  is appropriate and consistent based upon the sentencing factors enumerated in 18 USC §3553.

6  Ms. Navarro submits this sentencing memorandum in support of her request. Attached as

7  Exhibit A is a letter to the Court dated June 30, 2008 from Jennifer Navarro.

8                                    **BACKGROUND**

9      **A.      Offense Conduct**

10          In 2005, defendant Jennifer Navarro committed mail fraud by using the personal

11  information of her grandparents without their permission to obtain a $100,000 loan through a

12  refinance of their home in Brentwood, California. PSR ¶6.

13     **B.      Personal background**

14          Jennifer Navarro is a 31 year old single mother of two[1] who has, in the past, suffered from

15  depression and thoughts of suicide. PSR ¶49, 50; Exhibit A. She previously has been involved in

16  abusive relationships which has added to the fragility of her mental health. *Id*. at ¶50. In

17  addition, she has a history of using marijuana and alcohol to escape the depression and abuse. *Id*.

18  at ¶51.

19          Ms. Navarro committed the current offense in 2005 while she was on pre-trial release in

20  the Eastern district of California for a bank fraud case but before she self-surrendered to serve her

21  sentence in that case.[2] *Id*. at ¶33. In looking back to what was going on at the time of the offense

22  in 2005, Ms. Navarro says this:

23          I was depressed. I felt very sad and helpless at times. . . I . . . felt

24  _____

25      [1]Jennifer also has a third child who lives with his father. Exhibit A

26      [2]After the commission of the current offense, Ms. Navarro self-surrendered to serve a 15
    months sentence in custody. She also been on federal supervised release since 2007.

*U.S. v. Jennifer Navarro*, CR 07-00807 SBA
Sentencing Memo                                    2

1    disconnected emotionally, mentally and sometimes physically . . .
      Looking back at the impact of what I did, and how it has hurt and
2    will continue to affect my family, I can't believe that was me.

3   Exhibit A.

4                              **DISCUSSION**

5       **A.    Ms. Navarro Should be in Criminal History II, not III**

6       USSG §4A1.1(d) provides:

7           Add 2 points if the defendant committed the instant offense while
            under any criminal justice sentence, including probation, parole,
8           supervised release, imprisonment, work release, or escape status.

9   In addition, USSG §41.1, comment. (n.4.) again lists what constitutes being "under a[] criminal

10  justice sentence" and includes in that list "probation, parole, supervised release, imprisonment,

11  work release or escape status."  A review of the list makes it clear that being "under" a criminal

12  justice sentence means "to be serving" a criminal justice sentence as the list includes every type

13  of sentence that could be imposed.  Significantly, neither the guideline section nor the

14  commentary states that being "under a criminal justice sentence" would include either pretrial

15  supervision or the period after which an individual has been sentenced but has not yet started

16  serving his or her sentence.  The commentary does explicitly state that "failure to report for

17  service of a sentence of imprisonment is to be treated as an escape from such sentence" such that

18  if someone was supposed to start serving their sentence, but failed to report for service, that

19  individual would still be deemed to be "under a criminal justice sentence."  USSG §4A1.1,

20  comment. (n.4).

21      In the present case, a two level increase in the criminal history points is not applicable

22  because at the time of the offense, Ms. Navarro was not serving her sentence, nor had she yet

23  "failed to report for service of a sentence."  *Id.*  Rather, she was on pretrial supervision awaiting

24  self-surrender.  Simply put, she was not yet "serving" a criminal justice sentence, even though

25  one had been imposed, and therefore she was not "under" such a sentence, as defined by the

26  guidelines.

1    Because Jennifer was not "under" a criminal justice sentence at the time that she

2    committed the new offense, her criminal history points should total three rather than five.  With

3    three criminal history points, her criminal history category would be II, leading to a guideline

4    range of 18 - 24 months.  Regardless of whether the Court determines, however, a sentence of 21

5    months in custody.

6    **B.     A Sentence of 21 Months in Custody is Sufficient, But Not Greater Than Necessary, to Satisfy the Goals of Sentencing**

7    The Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005),

8    *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586

9    (2007), have dramatically altered the district court's role in sentencing.  Taken together, these

10    cases make it clear that district court judges now have the ability, as well as the duty, to exercise

11    their judgment and discretion in arriving at a sentence that is "sufficient, but not greater than

12    necessary, to comply with the purposes set forth in paragraph (2)."   Section 3553(a)(2) states that

13    such purposes are:

14         (A)    to reflect the seriousness of the offense, to promote respect for the law, and to
15                provide just punishment for the offense;

16         (B)    to afford adequate deterrence to criminal conduct;

17         (C)    to protect the public from further crimes of the defendant; and

18         (D)    to provide the defendant with needed educational or vocational training, medical
                  care, or other correctional treatment in the most effective manner.
19
20    18 U.S.C. § 3553(a)(2).  Moreover, district courts must consider "the nature and circumstances of

21    the offense and the history and characteristics of the defendant," the kinds of sentences available,

22    the policies of the Sentencing Commission, the guidelines, the need to avoid unwarranted

23    sentence disparities, and the need to provide restitution to any victims. 18 U.S.C. §3553(a)(1) -

24    (7); *see also, e.g., United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (describing the

25    "overarching statutory charge for a district court").

26    The Guidelines, "formerly mandatory, now serve as one factor among several courts must

1  consider in determining an appropriate sentence." *Kimbrough*, 128 S.Ct. at 564.  While "district

2  courts still 'must consult [the] Guidelines and take them into account when sentencing,'" *United*

3  *States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *Booker*, 543 U.S. at 264), the

4  district courts "may not presume that the Guidelines range is reasonable," *Gall*, 128 S.Ct. at 596-

5  97 (citing *Rita v. United States*, 127 S.Ct. 2456 (2007)).  And, as the Court's subsequent decisions

6  in *Gall* and *Kimbrough* demonstrate, *Booker*'s consultation requirement is not intended to limit

7  the district court's sentencing discretion.

8      The Court in *Gall* emphasized the importance of deferring to the judgment of the

9  sentencing courts, explaining:

10         The sentencing judge is in a superior position to find facts and
           judge their import under § 3553(a) in the individual case.  The
11         judge sees and hears the evidence, makes credibility determinations,
           has full knowledge of the facts and gains insights not conveyed by
12         the record.  "The sentencing judge has access to, and greater
           familiarity with, the individual case and the individual defendant
13         before him than the Commission or the appeals court."

14  *Gall*, 128 S. Ct. at 597-98 (quoting *Rita v. United States*, 127 S.Ct. 2456, 2469 (2007)).  In *Gall*,

15  the district court rejected a Guidelines range of 30 to 37 months in favor of probation.  In

16  upholding the sentence, the Supreme Court acknowledged that "the Guidelines are not mandatory,

17  and thus the 'range of choice dictated by the facts of the case' is significantly broadened." *Id.* at

18  602.  In this case, the agreed upon sentence of 21 months falls within the guideline and the

19  appropriate sentence.

20      **1.    Nature and Circumstances of the Offense**

21      Under 18 U.S.C. §3553(a), the Court should consider the nature and circumstances of the

22  offense in determining an appropriate sentence.   In this case, the offense of mail fraud is serious

23  not only because Ms. Navarro Jennifer committed mail fraud by obtaining a loan on her

24  grandparents' house without their knowledge, but also because Ms. Navarro's grandparents are

25  considered to be "vulnerable victims."  The offense is also serious because Ms. Navarro

26  committed the offense while on pretrial release for a similar offense.  However the case is nature

*U.S. v. Jennifer Navarro*, CR 07-00807 SBA
Sentencing Memo                          5

1  and circumstances of the offense are mitigated by the fact that at the time of the offense, Ms.

2  Navarro was suffering mentally from depression and suicidal thoughts and was also suffering

3  from an abusive relationship. In addition, she has made peace with her grandparents who have

4  forgiven her for her actions.[3] Most significantly, the conduct occurred three years ago, and Ms.

5  Navarro already has been in prison and supervision since that time and has been rehabilitated. As

6  discussed more clearly below, the time in custody and on supervision has been very helpful to

7  her. Furthermore, the offense is a monetary crime and Ms. Navarro will pay the restitution as best

8  she can. Under these circumstances, a sentence of 21 months is appropriate.

9      **2.    The History and Characteristics of Jennifer Navarro**

10         Under 18 USC §3553(a), the history and characteristics of Jennifer Navarro is a separate

11  factor for the Court to consider in fashioning a fair and just sentence. As described in the PSR,

12  Jennifer grew up in a loving home, although her parents were pre-occupied with Jennifer's

13  adopted siblings who had behavioral and other issues related to abuse that they had previously

14  suffered. PSR ¶43. Interestingly, as she grew older, Jennifer herself became involved in abusive

15  relationships. She turned to marijuana and alcohol as an escape. *Id*. at ¶51.

16         As the PSR confirms, Jennifer has worked almost continuously from the time she was 19

17  years old to the present (except when she was in custody) and she knows how to make an honest

18  living. PSR ¶54-66. Moreover, during the three years since she committed the current offense

19  back in 2005, Ms. Navarro has changed. Significantly, the time she served in custody and on

20  supervision has played a role in helping Ms. Navarro to get back on track:

21                 While I was incarcerated . . . I had a lot of time to reflect
                   on my life and the importance of everyone in it. I began
22                 taking parenting classes. . .a domestic violence support
                   group and continued counseling with my pastor. . . . I've
23                 been working . . . I'm stable now. I have finally been

24  _____

25         [3]Jennifer has spoken to her grandparents since the commission of the offense three years
   ago and about her sorrow at what she had done. They have known her all her life and as she has
26  pieced together her own life, she now shares a very close relationship with them.

1                   allowed to begin a relationship with my oldest son. . .

                  I've learned a lot about myself.

2

   Exhibit A.  The history and characteristics of Jennifer Navarro warrant a sentence of 21 months.

3

       **3.    A sentence of 21 months is sufficient to show respect for the law,  just**

4 **punishment, adequate deterrence and to protect the public or for training**

5        18 U.S.C. §3553 provides that the Court shall consider the need for a sentence to promote

6 respect for the law, provide just punishment for the offense and afford adequate deterrence to

7 criminal conduct.  18 U.S.C. §3553(a)(2)(A) and (B).  Furthermore, the Court is required to

8 consider the need to provide a defendant with needed educational or vocational training or other

9 correctional treatment in the most effective manner.  18 U.S.C. §3553(a)(2)(D).  A sentence of 21

10 months meets these objectives of sentencing.

11        For example, the sentence does not need to be greater to show respect for the law, because

12 Jennifer Navarro has respect for the law.  She is 31 years old and, aside from her actions over a

13 three year period from 2002 through 2005, which includes the time period during which the past

14 and current offense were committed, Jennifer has worked hard to lived a law-abiding life.  *See*

15 PSR ¶¶33, 37-40; 54-66.

16        In addition, a sentence of 21 months serves the purposes of just punishment and adequate

17 deterrence in light of the fact that Jennifer already has turned her life around since the

18 commission of the offense in 2005.  Jennifer hasn't gotten in any trouble since she was released

19 from custody, and now enjoys a loving relationship with her children.  As she indicated in her

20 letter to the Court, she "is stable now."  Exhibit A.  Given the fact that Jennifer already has

21 addressed the issues which caused her great problems and is now happy and stable, requiring her

22 to now serve 21 months will serve the purposes of just punishment and adequate deterrence.  Any

23 more time in custody would be greater than necessary and inconsistent with the 18 U.S.C. §3553

24 factors especially where the time in custody has provided adequate deterrence already.  As

25 Jennifer describes it:

26                   I have learned that sentencing and probation contain

1
2
3
4

both components of retribution for society in the form of punishment, but also the hope of rehabilitation. While I was incarcerated . . .look at the overall impact the system has made on me . . . I ask . . . that you . . .give consideration to the progress and rehabilitation that has occurred.

Exhibit A. Jennifer's letter makes it clear that she is remorseful. It also indicates that she has

been deterred. Under these circumstances, a sentence of 21 months will serve the purpose of

adequate deterrence.

Finally, a sentence of 21 months in custody also would further the sentencing factor of

providing a defendant with any "needed educational, vocational or other correctional treatment"

because it would enable Jennifer to participate in the BOP drug treatment program. *See* 18 U.S.C.

§3553(a)(2)(D). A sentence of more than 21 months is unnecessary to meet these goals and

objectives of sentencing.

**II.    Jennifer Navarro Requests That the Court Recommend to the Bureau of Prisons That She Participate in Drug Treatment and Be Designated Close to Home**

As discussed in the PSR, Jennifer has had problems in the past with marijuana and alcohol.

PSR ¶51, 52. At one point she was drinking and tequila and gin on a daily basis. *Id.* She has

never had drug treatment and is interested in receiving treatment in custody. *Id.* Jennifer Navarro

asks the Court recommend to the Bureau of Prisons that she attend the 500-hour RDAP drug

treatment program while in custody.

In addition, Jennifer asks that the Court recommend to the Bureau of Prisons that she be

designated to a facility in California in this area which will enable her to remain close to her

family.

/ / /

/ / /

/ / /

/ / /

/ / /

1 | / / /

2

3                              **CONCLUSION**

4          For all of the reasons described above, Jennifer Navarro asks the Court to sentence her to

5  21 months in custody.  This is consistent with the Plea Agreement and consistent with the goals of

6  sentencing.  She further asks the Court to recommend that she be recommended for the 500 hour

7  drug program and that she be designated to a facility as close to her family as possible.

8

9  Dated: July 3, 2008

10                                        Respectfully submitted,

11                                        BARRY J. PORTMAN
                                          Federal Public Defender
12
                                                /S/
13
                                          JOYCE LEAVITT
14                                        Assistant Federal Public Defender

15

16

17

18

19

20

21

22

23

24

25

26

# EXHIBIT   A

June 30, 2008

Honorable Judge Saundra Brown Armstrong
United States District Judge
1301 Clay Street
Oakland, CA 94607

Dear Judge Armstrong,

I am writing to you on behalf of myself. While I realize that my letter will at least in part be given slightly less persuasive weight due to the victims of the crime being my grandparents, I hope I can provide you with a more complete picture of myself as you contemplate my disposition in your court.

At the time this crime was committed, I was depressed. I felt very sad and helpless at times. I'm sure part of that depression was post-partum, plus I was having issues with my sons's father(s), but I believe that bigger part was due to the fact that I knew I was going to have to leave my son when I was finally sentenced for the previous crime I had committed. While I was under-going counseling with the pastor of my church on a weekly basis, I still felt disconnected emotionally, mentally, and sometimes physically.

During the summer that, while I was waiting to be sentenced, an opportunity had presented itself. And in an act of desperation, for lack of a better word, I jumped on it and I started cashing checks. I accept full responsibility for my actions. Looking back at the impact of what I did, and how it has hurt and will continue to affect my family, I can't believe that was me.

After having been incarcerated for 13 months, and being on supervised release for the past 16 months, I have learned that sentencing and probation contain both components of retribution for society in the form of punishment, but also the hope of rehabilitation. While I was incarcerated from 2006/2007 I had a lot of time to reflect on my life and the importance of everyone in it. I began taking parenting classes, and due to the fact that my daughter was involved with CFS (Children & Family Services), I continued to take parenting classes when I was released. I also attended 6 months in a domestic violence support group and continued counseling with my pastor.

I've been working part-time at In2itive Marketing for the past year, and have been able to spend lot of time at home with my children. I'm stable now. I have finally been allowed to begin a relationship with my oldest son, thanks to forgiveness and understanding from his father. I've learned a lot about myself through counseling and the domestic violence support group. I'm asking that you look at the overall impact the system has made on me, and that in some way, the goal of rehabilitation was actually met.

I would like to thank you for taking the time to read my letter. I ask only that you consider all of the progress I've made through this troubled time and give due consideration to the progress and rehabilitation that has occurred. Again, thank you for your time.

Jennifer Navarro